**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No. 1:22-cv-21397-KMW**

**JAFET CASTRO-REYES**,
     Plaintiff

vs.

**CITY OF OPA-LOCKA**, **GERMAN BOSQUE, LOUIS SERRANO, SERGIO PEREZ, DANIEL KELLY, and UNKNOWN OFFICERS,**
     Defendants.

_____/

## FIRST AMENDED COMPLAINT

Plaintiff Jafet Castro sues the City of Opa Locka and City of Opa Locka Police Officers German Bosque, Louis Serrano, Sergio Perez, Daniel Kelly, and Unknown Police Officers based on this teenager's brutal and unjustified beating and repeated stun gunning in broad daylight while he was tied up and defenseless. This is a case of a teenager who suffered from mental illness who was beaten and stunned repeatedly by the police while he was tied up and dragged down a flight of stairs by his feet while his head hit the stairs. This is outrageous case of excessive force and Civil Rights Violations warrants a judgment in his favor.

## INTRODUCTION

This Federal Civil Rights and state law tort action arises from the arrest of Jafet Emmanuel Castro-Reyes, on September 21, 2020, by Defendants Bosque, Serrano, Perez, Kelly, and other Unknown City of Opa-Locka Police Officers.

Plaintiff Jafet Castro files this action seeking monetary, declaratory, and injunctive relief, including damages stemming from these officers' illegal entry into Castro's apartment and for the excessive force used while illegally arresting Castro and beating and stun gunning him while he was helpless.

## **JURISDICTION AND PARTIES**

1.      This is an action for damages exceeding $75,000.00, not including costs, attorney's fees, and prejudgment interest.

2.      The claims asserted arise pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth Amendment to the United States Constitution, the Fourteenth Amendment to the United States Constitution, and the laws of the State of Florida. This Court has jurisdiction to hear all claims contained in this action.

3.      This court has original jurisdiction over claims brought pursuant to 42 U.S.C. § 1983 and concurrent subject matter jurisdiction over the claims brought pursuant to Florida law.

4.      Venue is properly in Miami-Dade County, Florida because it is where all the parties reside and where the events complained of occurred.

5.      Plaintiffs have performed all conditions precedent, in accordance with §768.28(6), Florida Statutes, and all other requirements, before bringing this action. All conditions precedent have otherwise occurred, been performed, been met, been waived, would be futile, or are otherwise inapplicable.

6.      This complaint is based on the individual and concerted conduct of

the named defendants in using the police power of the State of Florida to deprive Castro of his constitutional and civil rights. The defendants' conduct, individually and jointly, occurring under color of law, violated the rights of Castro under the Fourth and Fourteenth Amendments to the United States Constitution as well as the statutes and laws of Florida.

7.     At all times material to this action, all defendants acted under color of state or local law.

## PARTIES

8.     Plaintiff Jafet Emmanuel Castro-Reyes (hereinafter the "Plaintiff" or "Castro") is a resident of Miami Dade County Florida and is otherwise sui juris;

9.     At all relevant times, defendant CITY OF Opa-Locka ("City") is and was a duly organized public entity existing under the laws of the State of Florida. At all relevant times, City was the employer of Defendant Officer Bosque, Officer Serrano, Officer Perez, Officer Kelly, and all unknown officers.

10.     At all relevant times, defendant Officer Bosque was a duly authorized employee and agent of City, who was acting under color of law within the course and scope of his duties as a police officer and with the complete authority and ratification of his principal, defendant City. Officer Bosque is a citizen of the State of Florida residing in Miami-Dade County and is over the age of 18 years.

11.     At all relevant times, defendant Officer Daniel Kelly was a duly

authorized employee and agent of City, who was acting under color of law within the course and scope of his duties as a police officer and with the complete authority and ratification of his principal, defendant City. Officer Serrano is a citizen of the State of Florida residing in Miami-Dade County and is over the age of 18 years.

12.    At all relevant times, defendant Officer Serrano was a duly authorized employee and agent of City, who was acting under color of law within the course and scope of his duties as a police officer and with the complete authority and ratification of his principal, defendant City. Officer Serrano is a citizen of the State of Florida residing in Miami-Dade County and is over the age of 18 years.

13.    At all relevant times, defendant Officer Perez was a duly authorized employee and agent of City, who was acting under color of law within the course and scope of his duties as a police officer and with the complete authority and ratification of his principal, defendant City. Officer Perez is a citizen of the State of Florida residing in Miami-Dade County and is over the age of 18 years.

14.    At all relevant times, all unknown officers were duly authorized employees and agents of City, who were acting under color of law within the course and scope of their duties as police officers and with the complete authority and ratification of their principal, defendant City. All unknown officers are citizens of the State of Florida residing in Miami-Dade County and are over the

age of 18 years.

15.     The causes of actions contained in this complaint occurred and accrued in Miami-Dade County, Florida, in the Southern District of Florida.

## RELEVANT FACTS COMMON TO ALL COUNTS

16.     The Apartment at 2544 York Street, Apt #3, Opa-locka, Florida 33054, at all times relevant was the domain to Mr. Castro and his father.

17.     Castro at no point gave consent to the officers to enter the dwelling.

18.     Castro asked all defendants to leave his home at some point during the encounter.

### I.     Officer Interaction with Jafet Castro.

19.     On September 21, 2020, at approximately 3:40 p.m., Officer Bosque, Perez, Serrano, and others responded to a dispatch concerning a domestic issue at 2544 York Street, Apt #3, Opa-locka, Florida 33054.

20.     Upon arriving at the scene, Officer Bosque observed the cousin, Jose Varela, of the plaintiff standing outside of the complex.

21.     Upon entering the Castro's apartment, Officer Bosque and the other officers observed Castro, who is a teenager who suffers from mental illness, lying down on the ground tied up and completely subdued.

22.     At that point Castro was not a danger to himself or anyone around him.

23.     Officer Bosque immediately said, "lets cuff him, handcuff him,

handcuff him."

24.     Castro then asked Officer Bosque to untie him. Officer Bosque refused to untie him and instructed him to turn around. Castro was tied up with rope during this entire exchange.

25.     Varela again informed Officer Bosque that Castro was not aggressive and not dangerous.

26.     At that point Castro began to pray. Officer Bosque asked his name, at which point Castro says he wants them to leave his home that the officer had entered without a warrant.

27.     Officer Bosque and an Officer Kelly then attempt to handcuff Castro and flip him over, using force. Castro had committed no crime.

28.     After several failed attempts at flipping Castro to his back, Officer Bosque called for backup from the officers outside. At no time was Castro a threat.

29.     While physically being restrained by two officers, Castro prayed out to God for the officers to leave the home and for them to leave him alone.

30.     Once back up arrives, while Castro is on the ground and helpless with one hand cuffed, officers yell "tase him" at which point Officer Serrano took careful aim at Castro and begins to taser him.

31.     Officer Serrano used the taser for about thirty seconds straight without stopping, causing Castro unbearable pain and harm without any lawful

justification.

32.     At this point, Varela begins to scream at the officers claiming he was asking for help not for them to harm Castro. Varela also informs the officers that Castro is helpless and suffers from mental illness.

33.     Officer Perez then begins to punch Castro in the face, with a closed first, while Castro was tied up and restrained while being punched by Officer Perez. Perez, who was assisted by the other officers, had no lawful justification as Castro was completely subdued and not a threat.

34.     While Castro was subdued, defenseless and not a threat, Perez repeatedly punched Castro, while other officer repeatedly stun gunned him with no lawful justification. All officers had been informed that Castro suffered from mental illness and he was not a threat.

35.     After getting punched, unknown officers again used the taser on Castro. The taser was used on his body and on his neck causing marks, pain, and injury to this unarmed, subdued, and defenseless teenager.

36.     The officers then decided to take Castro outside and drag him by his pants, which are down by his ankles, banging his head on the steps while being dragged outside. While being dragged, the officers continue to taser Castro.

37.     After being dragged down the stairs by his feet and being tasered, Castro continued to pray and plea that all the officers leave his home.

38.     Officers finally restrain Castro and place him in the back of a police

car and arrest him without any crime being committed and without any probable cause.

## II.     Officer History.

39.     Officer Perez illegally stun gunned his own fellow police officer.

40.     Officer Perez's actions resulted in the killing of four innocent tourists in a wrong-way car crash.

41.     Officer Perez punched a woman in the face during her arrest where she later needed facial reconstruction surgery and metal plates surgically placed into her head.

42.     Officer Perez was fired from his previous police position with a former local police department for crashing while drag racing.

43.     Officer Bosque was fired for having "engaged a subordinate officer to create a false police report and failed to secure a firearm at a crime scene."

44.     Officer Bosque was fired for having unlawfully seized items including cocaine, crack pipes, bottles of vodka and a number of IDs.

45.     Officer Bosque has been fired on a number of occasions, and leads in the State with the most disciplines, fines, and suspensions as a police officer.

46.     Officer Bosque was found guilty of false imprisonment and tampering in 2014.

47.     Both officers have lengthy histories of excessive force, yet remained in the employ of the City of Opa Locka Police Department.

48.     Despite the officers being well known to the City to be a danger to the community to engage in excessive force, the City chose to send them to Castro's home.

49.     The City never provided proper or adequate training on encountering individuals with mental health issues or the use of force.

50.     Castro suffered severe trauma and permanent injuries.

## CAUSES OF ACTIONS AGAINST OFFICERS BOSQUE, PEREZ, SERRANO, KELLY, AND UNKNOWN OFFICERS

### COUNT I – Illegal Entry Into Home — Under 42 U.S.C. § 1983, Fourth Amendment, and Fourteenth Amendment
### (Against Bosque, Serrano, Perez, Kelly, and Unknown Officers)

51.     Plaintiff realleges paragraphs 1 through 50.

52.     The law is clearly established that a warrantless entry into a home must be accompanied by probable cause to believe a crime has been committed and exigent circumstances.

53.     Castro was inside of his home, where he lived, when he interacted with the defendants.

54.     Castro asked the defendants a countless number of times to leave his home and that they were not allowed to be in the home.

55.     It was also a violation of the Fourth Amendment to the United States Constitution for Defendants Bosque, Serrano, Perez, Kelly, and the unknown officers to enter and remain in Castro's home without a warrant or exigent

circumstances, especially after being asked to leave by Castro.

56.     Likewise, at the time defendants entered the home, no exigent circumstances existed to justify Defendants' entry into the home. Castro was not seized or subject to seizure by law enforcement, was not fleeing law enforcement, did not present an imminent risk of serious injury to any person, and did not raise the risk of the destruction of any evidence.

57.     At the time defendants Bosque, Serrano, Perez, Kelly, and the unknown officers entered the premise Castro had a right not to be subjected to warrantless and nonconsensual entry into his home.

58.     Defendants Bosque, Serrano, Perez, Kelly, and the unknown officers knew or should have known that their conduct in entering the premises without a warrant violated the clearly established constitutional rights of Castro.

59.     At the time defendants Officers Bosque, Serrano, Perez, Kelly, and the unknown officers entered Castro's home, no officer in their position could have believed there was probable cause to believe that Castro committed any crime.

60.     At the time Castro was inside the home, no officer in defendants' position could have believed there was reasonable suspicion to believe that Castro had committed or would commit any crime.

61.     Under well-established Supreme Court and 11th Circuit precedents in effect at the time of this incident, no objectively reasonable officer in Bosque,

Serrano, Perez, Kelly, or the unknown officers' position could have believed any officer was entitled to make, contrary to the Fourth Amendment, the warrantless and nonconsensual entry into a suspect's home in order to make an arrest. *Payton v. New York*, 445 U.S. 573, 576 (1980). There must be exigent circumstances. "The term 'exigent circumstances' refers to a situation where the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action." *United States v. Burgos*, 720 F.2d 1520, 1526 (11th Cir. 1983). "Recognized situations in which exigent circumstances exist include: 'danger of flight or escape; danger of harm to police officers or the public; risk of loss, destruction, removal, or concealment of evidence; and 'hot pursuit' of a fleeing suspect.'" *United States v. Santa*, 236 F.3d 662, 669 (11th Cir. 2000) (quoting *United States v. Blasco*, 702 F.2d 1315, 1325 (11th Cir. 1983)). There were no exigent circumstances.

62.    Defendants Bosque, Serrano, Perez, Kelly, and the unknown officers acted under color of law and as employees of the Opa-Locka Police Department in committing the conduct identified in this Count.

63.    Defendants Bosque, Serrano, Perez, Kelly, and the unknown officers' warrantless entry into Castro was willful, reckless, callous, intentional, and malicious in derogation of the plaintiff's rights under federal and state law.

64.    As a direct and proximate result of Bosque, Serrano, Perez, Kelly, and the unknown officer's violation of Castro's civil rights, Castro suffered

damages, including mental anguish, bodily injury, pain and suffering, and humiliation.

65.     By reason of the acts, omissions, wrongs, and other conduct perpetrated by Bosque, Kelly, Serrano, Perez, and the unknown officers individually, severally, and collectively, in depriving Castro of valuable constitutional rights, it was necessary for plaintiff to retain the services of legal counsel to secure redress for the deprivation of Castro's constitutional rights. Thus, plaintiff incurred substantial and reasonable attorney's fees and costs and is entitled to recover them from the defendants pursuant to 42 U.S.C. §1988 and under Florida law.

For these reasons, Castro demands judgment more than Seventy-Five Thousand Dollars ($75,000.00) against Bosque, Serrano, Kelly, Perez, and the unknown officers for damages, punitive damages, prejudgment interest on liquidated damages as allowed by law, costs of this action, reasonable attorney's fees, and any other relief this Court deems just and proper.

**COUNT II – False Arrest — Under 42 U.S.C. § 1983, Fourth Amendment, and Fourteenth Amendment**
**(Against Bosque, Serrano, Perez, Kelly, and Unknown Officers)**

66.     Plaintiff realleges paragraphs 1 through 50.

67.     By placing Castro in handcuffs and transporting him to the County Jail, defendants arrested him.

68.     At the time of the arrest, no reasonable police officer could have

believed that there was probable cause to believe Castro committed any criminal offense.

69.   Prior to entering Castro's home, defendants did not have any reasonable articulable suspicion that would authorize the detention of plaintiff for any reason or length of time.

70.   Detention pursuant to reasonable suspicion is not permitted inside of someone's home.

71.   Because Castro's arrest is not supported by arguable probable cause, defendants violated Castro's clearly established Fourth Amendment rights.

72.   The actions by defendants Bosque, Serrano, Perez, Kelly, and the unknown officers in entering the home and arresting Castro with force, were reckless, objectively unreasonable, and constituted a false arrest in violation of the Fourth Amendment to the United States Constitution.

73.   Because defendants could not legally arrest Castro, they were not permitted to use any force whatsoever, and all physical and mental injuries received by Castro during the arrest were proximately caused by defendants.

74.   Castro was placed under arrest at the direction of each defendant in this count, and each defendant in this count participated in the decision to arrest Castro.

75.   The actions of each defendant were the proximate cause of Castro's

arrest.

76.    Defendants Bosque, Serrano, Perez, Kelly, and the unknown officers' conduct caused Castro's injuries and mental anguish.

77.    Defendants Bosque, Serrano, Perez, Kelly, and the unknown officers acted under color of law and as employees of the Opa-Locka Police Department in committing the conduct identified in this count.

78.    At the time Defendants Bosque, Serrano, Perez, Kelly, and the unknown officers entered the premise and arrested Castro, Castro had a right to be free from and illegal arrest or to be taken into custody.

79.    Defendants Bosque, Serrano, Perez, Kelly, and the unknown officers' unlawful arrest was willful, reckless, callous, intentional, and malicious in derogation of the plaintiff's rights under federal and state law.

80.    By reason of the acts, omissions, wrongs, and other conduct perpetrated by Bosque, Serrano, Perez, Kelly, and the unknown officers individually, severally, and collectively, in depriving Castro of valuable constitutional rights, it was necessary for Castro to retain the services of legal counsel to secure redress for the deprivation of Castro's constitutional rights. Thus, plaintiff incurred substantial and reasonable attorney's fees and costs and is entitled to recover pursuant to 42 U.S.C. §1988 and under Florida law.

For these reasons, Castro demands judgment more than Seventy-Five Thousand Dollars ($75,000.00) against the defendants for damages, punitive

damages, prejudgment interest on liquidated damages as allowed by law, costs of this action, reasonable attorney's fees, and any other relief this Court deems just and proper.

### COUNT III – Excessive Force — Under 42 U.S.C. § 1983, Fourth Amendment, and Fourteenth Amendment (Against Bosque, Serrano, Perez, Kelly, and Unknown Officers)

81.  Plaintiff realleges paragraphs 1 through 50.

82.  The tasing, beating up, and dragging of a 19-year-old from the inside of his home, who was tied up, unable to move, was not committing a crime, posed no threat of immediate harm, and was not arrested for any lawful basis, by a group of officers, is shocking to the conscience.

83.  Defendants Bosque, Serrano, Perez, Kelly, and the unknown officers committed acts that violated Castro's constitutional rights, including but not limited to, the right not to be subjected to excessive or unreasonable force, the right not to be subjected to unreasonable searches and seizures, the right to bodily integrity, the right to freedom of movement, and the right to terminate a police encounter not premised on reasonable suspicion or probable cause, and the right not to be subjected to warrantless and nonconsensual entry into his home in the absence of lawful exigent circumstances.

84.  The actions by Defendants Bosque, Serrano, Perez, Kelly, and the unknown officers in entering the home and arresting Castro with excessive force, were reckless, objectively unreasonable, and constituted an excessive use of

force in violation of the Fourth Amendment to the United States Constitution.

85.     Castro, who was mentally ill, unarmed, and tied up in his home when defendants Bosque, Serrano, Perez, Kelly, and unknown officers of the Opa-Locka Police Department used excessive force to illegally arrest him, suffered a violation of his federally protected rights prohibiting use of excessive force, because Castro posed no danger or threat of harm to Bosque, Kelly, Serrano, Perez, or any other Opa-Locka Police Department officers, himself, or any member of the public at the time defendants Bosque, Serrano, Perez, and Kelly entered Castro's home and arrested him.

86.     Defendants Bosque, Serrano, Perez, Kelly, and the unknown officers' conduct caused Castro's injuries and mental anguish.

87.     At the time defendants Bosque, Serrano, Perez, Kelly, and the unknown officers entered the premise and used excessive force to arrest Castro, Castro had a right to be free from unreasonable use of excessive force.

88.     Defendants Bosque, Serrano, Perez, Kelly, and the unknown officers knew or should have known that their conduct in entering the premises without a warrant and Arresting Castro and punching and tasering Castro for inhumane periods of time violated the clearly established constitutional rights of Castro.

89.     Defendants Bosque, Serrano, Perez, and the unknown officers' use of excessive force while executing the illegal arrest of Castro was willful, reckless, callous, intentional, and malicious in derogation of the plaintiff's rights under

federal and state law.

90.    The use of excessive force was done with callous and deliberate indifference to Castro's federally and state protected right to be free from excessive use of force.

91.    Defendants Bosque, Serrano, Perez, Kelly, and the unknown officers acted under color of law and as employees of the Opa-Locka Police Department in committing the conduct identified in this count.

92.    As a direct and proximate result of Bosque, Serrano, Perez, Kelly, and the unknown officer's violation of Castro's civil rights, Castro suffered damages, including mental anguish, bodily injury, pain and suffering, and humiliation.

93.    Even if the defendants' act of entering the home and arresting Castro were legal, defendants exceeded the scope of the force that can be legally used to effectuate an arrest.

94.    Defendants entering Castro's home and using force to handcuff and remove Castro from his home constituted a seizure and Castro's excessive force claim is governed by the Fourth Amendment.

95.    Defendants and any other unknown officers' use of the taser to subdue Castro was unnecessary because Castro was tied up and not posing a threat to anyone around him.

96.    The amount of time Castro was subjected to a taser and the fact the

taser seized being used against Castro because Officer Bosque said it was enough, was inhumane and a clear excessive use of force.

97.     Officer Perez used of a closed fist on Castro's face while Castro is tied up, handcuffed, and has other officers on top of him, amounts to clear excessive use of force.

98.     Clearly established law shows that Castro had the right to resist the arrest because the arrest was illegal and in clear violation of the Fourth Amendment.

99.     The force used to effectuate Castro's arrest is the proximate cause of his physical and mental injuries.

100.    By reason of the acts, omissions, wrongs, and other conduct perpetrated by Bosque, Serrano, Perez, Kelly, and the unknown officers individually, severally, and collectively, in depriving Castro of valuable constitutional rights, it was necessary for Castro to retain the services of legal counsel to secure redress for the deprivation of Castro's constitutional rights. Thus, plaintiff incurred substantial and reasonable attorney's fees and costs and is entitled to recover them from defendants pursuant to 42 U.S.C. §1988 and under Florida law.

For these reasons, Castro demands judgment more than Seventy-Five Thousand Dollars ($75,000.00) against defendants for damages, punitive damages, prejudgment interest on liquidated damages as allowed by law, costs

of this action, reasonable attorney's fees, and any other relief this Court deems just and proper.

**COUNT IV** - **Assault and Battery**
**(Against Bosque, Perez, Serrano, Perez, and Unknown Officers)**

101.  Plaintiff realleges paragraphs 1 through 50.

102.  Defendants Bosque, Serrano, Perez, Kelly, and the Unknown Officers committed acts intended to cause Castro an apprehension of harmful or offensive contact.

103.  Defendants Bosque, Serrano, Perez, Kelly, and the Unknown Officers committed acts that caused apprehension in Castro that harmful or offensive contact was imminent.

104.  Castro suffered a harmful and offensive contact when tasered, punched, and dragged on the floor by Bosque, Serrano, Perez, Kelly, and the Unknown Officers.

105.  Defendants Bosque, Serrano, Perez, Kelly, and the Unknown Officers were acting in the scope and furtherance of their employment as law enforcement officers.

106.  Defendants Bosque, Serrano, Perez, Kelly, and the Unknown Officers acted intentionally, in bad faith, or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

107.   As a direct and proximate result of Bosque, Serrano, Perez, Kelly, and the Unknown Officers' conduct, Castro suffered damages, including, bodily injury, pain and suffering, humiliation, loss of earnings, and loss of ability to earn money. The losses are permanent.

For these reasons, Castro demands judgment against Defendants Bosque, Serrano, Perez, Kelly, and the Unknown Officers for compensatory damages, punitive damages, prejudgment interest on liquidated damages as allowed by law, costs, and such other and further relief as the Court deems appropriate.

### COUNT V - False Imprisonment Claim
### (Against Bosque, Serrano, Perez, Kelly, and Unknown Officers)

108.   Plaintiff realleges paragraphs 1 through 50.

109.   Castro suffered a harmful and offensive seizure after being tasered, dragged, punched, and abused by defendants Bosque, Kelly, Serrano, Perez, and the Unknown Officers.

110. Defendants Bosque, Serrano, Perez, Kelly, and the Unknown Officers did not have reasonable suspicion or probable cause to seize or arrest Castro.

111. Defendants Bosque, Serrano, Perez, Kelly, and the Unknown Officers did not have warrant to seize or arrest Castro.

112. Defendants Bosque, Serrano, Perez, Kelly, and the Unknown Officers were acting in the scope and furtherance of their employment.

113.   Defendants Bosque, Serrano, Perez, Kelly, and the Unknown Officers acted intentionally, in bad faith, or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

114.   As a direct and proximate result of Defendants Bosque, Serrano, Perez, Kelly, and the Unknown Officers' conduct, Castro suffered damages, including, bodily injury, pain and suffering, humiliation, loss of earnings, and loss of ability to earn money. The losses are permanent.

For these reasons, Castro demands judgment against Defendants Bosque, Serrano, Perez, Kelly, and the Unknown Officers for compensatory damages, prejudgment interest on liquidated damages as allowed by law, punitive damages, costs, and such other and further relief as the Court deems appropriate.

**<u>CAUSES OF ACTION AGAINST CITY OF OPA-LOCKA</u>**

**COUNT VI** - **Federal Civil Rights Violations – Fourth Amendment**
**(Against City of Opa-Locka)**

115.   Plaintiff realleges paragraphs 1 through 50.

116.   Defendants Bosque, Serrano, Perez, Kelly, and the Unknown Officers violated plaintiff's rights to be free from unreasonable seizures and excessive force in violation of the Fourth Amendment to the United States Constitution.

117.   Final policymakers within the City of Opa-Locka were aware of Officer Perez's and Officer Serrano's histories, specifically with excessive use of force and misbehavior as police officers, yet failed to investigate, discipline, or take any action against the officers.

118.   Defendants Bosque, Serrano, Perez, Kelly, and the Unknown Officers have not been disciplined for their unnecessary and excessive use of force.

119.   Castro was seized when Opa-Locka police officers, inside his home, by means of physical force, terminated and/or restrained his freedom of movement through means intentionally applied. The officers excessively punched, tasered, and dragged Castro to get him to comply with the illegal arrest.

120.   Castro had the right to be free from any seizure in his home. The officers did not have any legal authority to be inside the home, and Castro had not broken any law nor was he a threat to himself or anybody at the time he was seized.

121.   The officers did not have probable cause or even reasonable suspicion to seize Castro.

122.   The defendants could not have reasonably believed that Castro had committed a crime or was about to commit any crime or public offense, particularly since Castro was unarmed, restrained, and clearly instructed the officers that they were illegally inside of his home with no permission to be there.

123.   With no lawful basis, reasonable suspicion, probable cause, or warrant, defendants used excessive force on plaintiff by repeatedly striking him, tasering him, and dragging him out of his home, as he bumped his head on the stairs.

124.   The City and Opa-Locka Police Department's failures to properly train its employees, including Bosque, Serrano, Perez, Kelly, and the unknown officers, on when entry into a home is legal, what constitutes probable cause for an arrest, and how to effectuate an arrest without excessive force, were a moving force behind the constitutional law violations alleged.

125.   The actions and inactions of defendant City of Opa-Locka and defendants Bosque, Serrano, Perez, Kelly, and the Unknown Officers were done pursuant to one or more of the following *de facto* policies, practices, and/or customs of the City that are so pervasive as to carry the force of law.

126.   The City has a *de facto policy*, practice, and/or custom of concealing and/or suppressing officer misconduct (both on-duty and off-duty misconduct), including the use of unlawful force and unlawful seizures. The concealment and suppression of the existence of misconduct includes, but is not limited to: failure to sufficiently investigate allegations of misconduct; failure to accept and act on citizen complaints against police officers; failure to investigate criminal conduct involving off-duty or on-duty officers; disparate treatment between an officer who is the subject of an investigation and a non-officer suspect; failure to promptly

record witness statements or preserve evidence; failure to promptly interview the suspected officer; failure to properly and sufficiently discipline an officer, even when a complaint is sustained; fabrication of exculpatory evidence or destruction of evidence; and failure to initiate prompt disciplinary procedures related to the alleged misconduct, even when the allegation of misconduct is meritorious.

127.   Likewise, the City has a *de facto* policy, practice, and/or custom of deficient and biased procedures for investigating complaints, including excessive force and unlawful searches and seizures against on-duty officers.

128.   The City has a *de facto* policy, practice, and/or custom of failing to maintain accurate and complete records of complaints and investigations of misconduct.

129.   The City has a *de facto* policy, practice, and/or custom of failing to turn over and disclose complete records of complaints and investigations of misconduct.

130.   Further, the City acted in a manner consistent with a *de facto* policy, practice, and/or custom of a "code of silence" and "blue shield" when it engaged in conduct such as, but not limited to, the following:

      a.    The City Internal Affairs ("IA"), and Police Department supervisors and superiors failed to conduct proper administrative investigations into the complaints against defendants Bosque, Serrano, Perez, and Kelly after the Castro

incident.

b.      The City, IA, and Opa-Locka Police Department supervisors and superiors failed to lawfully and/or properly adjudicate the administrative investigations into the complaints against defendants Bosque, Serrano, Perez, and Kelly after the Castro incident.

c.      The City and its Police Department's policies and practices governing behavioral intervention are deficient in that they are non-disciplinary.

131.    The City and its Police Department supervisors and superiors knew its officers were initiating unlawful searches and seizures as well as using excessive force against Opa-Locka citizens and residents. It took no actions to train or discipline its police officers.

132.    Individually and collectively, the above-described *de facto* policies, practices, and/or customs of the City proximately result in the culture and pervasive attitude among members of the Opa-Locka Police Department, including defendants Bosque, Serrano, Perez, Kelly, and the Unknown Officers, that they may engage in misconduct against citizens, residents, and others with impunity, and without fear of official consequence. Its police officers consider themselves "above the law."

133.    The aforementioned *de facto* policies, practices, and/or customs of

the City, individually and collectively, have been maintained and/or implemented with utter indifference by the City and has or have encouraged and/or motivated defendants Bosque, Serrano, Perez, and the Unknown Officers to engage in the described conduct and wrongful acts against Castro, and therefore acted as the direct and proximate cause of the injuries sustained by the plaintiff.

134. The aforementioned *de facto* policies, practices, and/or customs of the City, individually and/or collectively, was the moving force behind defendants Bosque, Serrano, Perez, Kelly, and the Unknown Officers' described conduct, depriving Castro of his Fourteenth Amendment substantive due process right to bodily integrity.

135. The above acts and/or omissions of the City violated Castro's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

136. As a direct and proximate result of City's conduct, Castro was subjected to injury, including deprivations of his civil rights and a battery. Castro suffered damages, including mental anguish, bodily injury, pain and suffering, humiliation, embarrassment, loss of earnings, and loss of ability to earn money. The losses are permanent.

For these reasons, Castro demands judgment against the City for compensatory damages, prejudgment interest on liquidated damages as allowed

by law, punitive damages, costs, attorney's fees, and such other and further relief as the Court deems appropriate.

**COUNT VII** - **Assault and Battery**
**(Against City of Opa-Locka)**

137.   Plaintiff realleges paragraphs 1 through 50.

138.   Defendants Bosque, Serrano, Perez, Kelly, and the Unknown Officers committed acts intended to cause Castro an apprehension of harmful or offensive contact.

139.   Defendant Bosque, Serrano, Perez, Kelly, and the Unknown Officers committed acts that caused apprehension in Castro that harmful or offensive contact was imminent.

140.   Castro suffered a harmful and offensive contact when he was tasered, punched, and dragged on the floor by Bosque, Serrano, Perez, Kelly, and the Unknown Officers.

141.   Defendants Bosque, Serrano, Perez, Kelly, and the Unknown Officers were acting in the scope of their employment.

142.   Defendants Bosque, Serrano, Perez, Kelly, and the Unknown Officers acted intentionally but not in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

143.   Pursuant to Florida Statute §768.28(9), the City of Opa-Locka is

liable.

144.   As a direct and proximate result of defendants Bosque, Serrano, Perez, Kelly, and the Unknown Officers' Assault and battery, Castro suffered damages, including mental anguish, bodily injury, pain and suffering, humiliation, embarrassment, loss of earnings, and loss of ability to earn money. The losses are permanent.

For these reasons, Castro demands judgment against the City for compensatory damages, prejudgment interest on liquidated damages as allowed by law, costs, and such other and further relief as the Court deems appropriate.

**COUNT VIII** - **False Imprisonment Claim**
**(Against City of Opa-Locka)**

145.   Plaintiff realleges paragraphs 1 through 50.

146.   Castro suffered a harmful and offensive seizure after being tasered, dragged, punched, and abused by defendants Bosque, Serrano, Perez, Kelly, and the Unknown Officers.

147.   Defendants Bosque, Serrano, Perez, Kelly, and the Unknown Officers did not have reasonable suspicion or probable cause to seize or arrest Castro.

148.   Defendants Bosque, Serrano, Perez, Kelly, and the Unknown Officers were acting in the scope and furtherance of their employment.

149.   Defendants Bosque, Serrano, Perez, Kelly, and the Unknown

Officers acted intentionally but not in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

150.   Pursuant to Florida Statute §768.28(9), the City of Opa-Locka is liable.

151.   For these reasons, Castro demands judgment against the City for compensatory damages, prejudgment interest on liquidated damages as allowed by law, punitive damages, costs, and such other and further relief as the Court deems appropriate.

**COUNT IX** - **Negligent Training and/or Supervision**
**(Against City of Opa Locka)**

152.   Plaintiff realleges paragraphs 1 through 50.

153.   At all times material hereto, defendant City owed a duty to take reasonable care in the instruction, training, and supervision of its employees.

154.   Defendant City breached its duty owed by failing to properly train its officers, failing to implement its agency review procedures, and by several negligent acts, including but not limited to:

a.   Maintaining a policy of ignoring and/or covering up known or suspected misconduct by its officers, including excessive and unreasonable uses of force and unlawful searches and seizures;

b.   Maintaining a policy, plan, and practice of using Opa-Locka Police

Department resources to protect its employees from criminal, civil, and administrative consequences of their unreasonable searches and seizures and excessive use of force and to protect the City from embarrassment and accountability;

c.  Maintaining a policy, plan, and practice of controlling persons and use of force reporting, allowing 1) incomplete statement-taking, 2) incomplete and disingenuous analysis of the force used, 3) understatements of the force used, and 4) overstatement of the resistance to which the use of force allegedly responded;

d.  Failing to meaningfully train and/or discipline officers with respect to the appropriate use of force during police-citizen encounters and the proper reporting of incidents that involved the use of force, even after learning of a steady increase in the number of sustained excessive force allegations against Opa-Locka Police Department employees;

e.  Failing to properly investigate suspected incidents of excessive force and unreasonable searches and seizures.

155.  Defendant City breached its duty owed by negligently instructing, training, and supervising defendants Bosque, Kelly, Serrano, Perez, and the Unknown Officers in the reasonable and safe use of tasers in the performance of his duties as a law enforcement officer and in the reasonable and safe interaction

with unarmed suspects without using unlawful violence.

156.   As a direct and proximate result of the City's negligent supervision, retention, and training of defendants Bosque, Serrano, Perez, Kelly, and the Unknown Officers, Castro was subjected to injury, including deprivations of his civil rights and a battery. Castro suffered damages, including mental anguish, bodily injury, pain and suffering, humiliation, embarrassment, loss of earnings, and loss of ability to earn money. The losses are permanent.

For these reasons, Castro demands judgment against the City for compensatory damages, prejudgment interest on liquidated damages as allowed by law, punitive damages, costs, and such other and further relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff requests a jury trial as to all counts so authorized.

Respectfully submitted,

**MICHAEL A. PIZZI, JR.**
***Attorneys for the Plaintiff***
Florida Bar No 079545
6625 Miami Lakes Drive,
Suite 316
Miami Lakes, Florida 33014
Phone:(305) 986-2277
FAX:  (305) 777-3802
E-mail: mpizzi@pizzilaw.com

By: _S/ Michael A. Pizzi, Jr._

MICHAEL A. PIZZI, Jr.

*S/ Benedict P. Kuehne*
**KUEHNE DAVIS LAW, P.A.**
**BENEDICT P. KUEHNE**
Florida Bar No. 233293
**JOHAN D. DOS SANTOS**
Florida Bar No. 1025373
100 S.E. 2nd Street, Suite 3105
Miami, FL 33131-2154
Tel: 305.789.5989
ben.kuehne@kuehnelaw.com
johand@kuehnelaw.com
efiling@kuehnelaw.com

## CERTIFICATE OF SERVICE

I certify this document was filed through CM/ECF and automatically served to all Counsel of record via electronic Service on December 31, 2022.

*S/ Benedict P. Kuehne*
**KUEHNE DAVIS LAW, P.A.**
**BENEDICT P. KUEHNE**
Florida Bar No. 233293
**JOHAN D. DOS SANTOS**
Florida Bar No. 1025373